1
2
3
4
5
6                   **UNITED STATES DISTRICT COURT**
7                         **DISTRICT OF NEVADA**
8
9    JAMES LEE LIKE,
10            Petitioner,                    Case No. 3:08-CV-00255-RCJ-(VPC)
11   vs.                                     **ORDER**
12   JACK PALMER, et al.,
13            Respondents.
14
15            Before the court are the amended petition for writ of habeas corpus pursuant to 28
16   U.S.C. § 2254 (#4), respondents' answer (#18), and petitioner's reply (#19).  The court finds that relief
17   is not warranted, and the court denies the petition.
18            Throughout this order, the court will refer to petitioner's first federal habeas corpus
19   action,  Like v. Farwell, Case No. 3:02-CV-00093-DWH-(RAM) (Like 1).  In the Eighth Judicial
20   District Court of the State of Nevada, a jury found petitioner guilty of grand larceny auto.  Like 1, Ex.
21   63 (#19).  The jury was unable to reach a verdict on other charges, and the state court declared a
22   mistrial.  Like 1, Ex. 64 (#19).  Petitioner then pleaded guilty to one count of burglary.  Like 1, Ex. 144
23   (#18).[1]  For the count of grand larceny, the state court determined that petitioner was a habitual criminal
24   and sentenced him to life imprisonment without the possibility of parole.  Like 1, Ex. 98 (#17).  For the
25
26
27   _____

28            [1]The six volumes of exhibits in Like 1 were not docketed in order.

1  count of burglary, the state court sentenced petitioner to ten years in prison, concurrent with the life
2  sentence for grand larceny.[2]  Like 1, Ex. 146 (#18).

3          Petitioner filed his first federal habeas corpus petition in 2002.  This court granted
4  petitioner relief on ground 3(E) of that petition:  Counsel had provided ineffective assistance because
5  counsel had not prepared for, and argued against, the use of prior convictions to adjudge petitioner as
6  a habitual criminal.  Like 1, Order, pp. 10-14 (#52).

7          Petitioner returned to the state district court for re-sentencing.  That court again
8  determined that petitioner was a habitual criminal and sentenced him to life imprisonment without the
9  possibility of parole. Petition, Ex. 8 (#4). Petitioner appealed, and the Nevada Supreme Court affirmed.
10  Id., Ex. 15 (#4).  Petitioner then petitioned the Supreme Court of the United States for a writ of
11  certiorari.  It was denied.  Id., Ex. 18 (#4).

12          Petitioner then commenced this action.

13          In ground 1, petitioner argues that the habitual-criminal statute, Nev. Rev. Stat.
14  § 207.010, could not be used to enhance his sentence because the facts of prior convictions and other
15  matters were not presented to the jury.  See Apprendi v. New Jersey, 530 U.S. 466 (2000).  As
16  petitioner recognizes, "section 207.010 does not violate Apprendi . . . ." Tilcock v. Budge, 538 F.3d
17  1138, 1145 (9th Cir. 2008), cert. denied sub nom. Tilcock v. Donat, 129 S. Ct. 926 (2009).  Ground 1
18  is without merit.  Reasonable jurists would not find this court's conclusion to be debatable or wrong,
19  and the court will not issue a certificate of appealability on this ground.

20          In ground 2, petitioner argues that the trial court did not make an informed and impartial
21  analysis, supported by particularized findings of fact, as to why it was imposing a habitual-criminal
22  statute, in violation of the Due Process Clause of the Fourteenth Amendment.  Contrary to petitioner's
23  argument, Nev. Rev. Stat. § 207.010 does not require particularized findings of fact and an in-depth
24  analysis on the record; the judge need only recognize that imposition of a habitual-criminal sentence is
25  a matter of discretion and is not a requirement upon finding the requisite number of prior convictions.

26

27          [2]The sentence for burglary has now expired, and it is not the basis for any of petitioner's
28  claims in this action.

-2-

1   Tilcock v. Budge, 538 F.3d 1138, 1144 (9th Cir. 2008) (citing O'Neill v. State, 153 P.3d 38 (Nev.

2   2007), Hughes v. State, 996 P.2d 890 (Nev.2000) (per curiam)).   The transcript of the sentencing

3   hearing shows that the parties and petitioner argued extensively over whether to impose the habitual-

4   criminal sentence, and that the judge considered those arguments before sentencing petitioner as a

5   habitual criminal.   Petition, Ex. 7 (#4).   Ground 2 is without merit.   Reasonable jurists would not find

6   this conclusion to be debatable or wrong, and the court will not issue a certificate of appealability on this

7   ground.

8            Ground 3 is a claim that petitioner's sentence of life imprisonment without the possibility

9   of parole is so disproportionate to his crime that the sentence violates the Eighth Amendment.   On this

10  issue, the Nevada Supreme Court held:

11           Finally, Like contends that his sentence of life without the possibility of parole violates
             the Eighth Amendment's violation [sic] against cruel and unusual punishment.   A
12           sentence within the statutory limits is not "'cruel and unusual punishment unless the
             statute fixing punishment is unconstitutional or the sentence is so unreasonably
13           disproportionate to the offense as to shock the conscience.'"   Like argues that not only
             is his punishment grossly disproportionate to the severity of the crime, but is unfair given
14           his advanced age, poor health, good prison record, and the fact that he has already served
             twelve years in prison for his crime.   However, the district court was aware of all these
15           circumstances and nonetheless imposed the maximum sentence permissible under NRS
             207.010.   Although Like's sentence may be harsh, we conclude that he fails to
16           demonstrate that the district court abused its discretion in imposing it.

17
18  Ex. 15, pp. 5-6 (#4) (quoting Blume v. State, 915 P.2d 282, 284 (Nev. 1996) (quoting in turn Culverson

19  v. State, 596 P.2d 220, 221-22 (Nev. 1979))).

20           "A federal court may grant a state habeas petitioner relief for a claim that was adjudicated

21  on the merits in state court only if that adjudication 'resulted in a decision that was contrary to, or

22  involved an unreasonable application of, clearly established Federal law, as determined by the Supreme

23  Court of the United States,'" Mitchell v. Esparza, 540 U.S. 12, 15 (2003) (quoting 28 U.S.C.

24  § 2254(d)(1)), or if the state-court adjudication "resulted in a decision that was based on an unreasonable

25  determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C.

26  § 2254(d)(2).

27           A state court's decision is "contrary to" our clearly established law if it "applies a rule
             that contradicts the governing law set forth in our cases" or if it "confronts a set of facts
28           that are materially indistinguishable from a decision of this Court and nevertheless arrives
             at a result different from our precedent."   A state court's decision is not "contrary to . .

. clearly established Federal law" simply because the court did not cite our opinions.  We have held that a state court need not even be aware of our precedents, "so long as neither the reasoning nor the result of the state-court decision contradicts them."

Id. at 15-16.  "Under § 2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must be objectively unreasonable."  Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003) (internal quotations omitted).

> [T]he range of reasonable judgment can depend in part on the nature of the relevant rule.  If a legal rule is specific, the range may be narrow.  Applications of the rule may be plainly correct or incorrect.  Other rules are more general, and their meaning must emerge in application over the course of time.  Applying a general standard to a specific case can demand a substantial element of judgment.  As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

The rule regarding the proportionality of a sentence is about as general as possible.  "A gross disproportionality principle is applicable to sentences for terms of years."  Andrade, 538 U.S. at 72.  "[T]he precise contours of [it] are unclear, applicable only in the 'exceedingly rare' and 'extreme' case."  Id. at 73.  Nevada's requirement that a sentence be shocking to the conscience is a reasonable fit to Andrade's requirement that the gross disproportionality rule applies only in exceedingly rare and extreme cases.

A comparison of the sentence and crime in this case to the two recent cases decided by the Supreme Court of the United States shows that the Nevada Supreme Court reasonably applied Andrade.  Andrade received consecutive sentences of life imprisonment with the possibility of parole for two separate thefts of videotapes.  His prior crimes were misdemeanor theft, at least three counts of residential burglary, two counts of transportation of marijuana, and an arrest for violation of parole by escaping from a federal prison.  Andrade, 538 U.S. at 66-67.  The Supreme Court of the United States held that the California Court of Appeal did not apply the gross disproportionality principle unreasonably when it upheld Andrade's life sentences.  Id. at 77.  In Ewing v. California, Ewing received a life

-4-

sentence with the possibility of parole for stealing three golf clubs.  His prior crimes were misdemeanor theft, felony grand theft auto, petty theft with a prior conviction, battery, burglary, possession of drug paraphernalia, appropriating lost property, unlawful possession of a firearm and trespassing, first-degree robbery, and three counts of residential burglary.  538 U.S. at 17-20.  A plurality of the Supreme Court of the United States determined that the life sentence was not grossly disproportionate.  538 U.S. at 30-31.[3]  Petitioner's crime was grand larceny auto.  Although the value of the automobile was not given, he stole a 1992 Oldsmobile in January 1994, and it probably was worth more than the items that Andrade and Ewing stole.  At petitioner's first sentencing hearing on October 1, 1996, the prosecution offered six prior convictions.  The trial court found that three satisfied Nev. Rev. Stat. § 207.010: A 1983 conviction for forgery, a 1989 conviction for attempted grand larceny auto, and a 1992 conviction for attempted theft of a firearm.  Like 1, Ex. 78 (#17).  The judge did not give any reason why he did not find the other three convictions to be acceptable, but for them the prosecution did not present certified copies of the judgments of conviction, as required by Nev. Rev. Stat. § 207.016(5).  Like 1, Ex. 77 (#17).  At the second sentencing hearing, the prosecution again presented those six prior convictions, but the prosecutor also stated that petitioner's criminal history was more extensive than that.  Including the crimes mentioned above, petitioner's criminal history consists of burglary, a violation of the national motor vehicle theft act, theft, armed robbery, theft from a person, entry to commit a felony, forgery, armed robbery, misdemeanor automobile theft, attempted grand larceny auto, and attempted theft of a firearm.  Petition, Ex. 7, pp. 7-8 (#4).  Petitioner's criminal history is largely comparable to the criminal histories of Andrade and Ewing.  If the Supreme Court of the United States found that life sentences for Andrade and Ewing were acceptable, then this court cannot conclude that the Nevada Supreme Court unreasonably applied the gross disproportionality principle.

In contrast, the Supreme Court of the United States found that a sentence of life without the possibility of parole violated the Eighth Amendment in Solem v. Helm, 463 U.S. 277 (1983).  Helm's history of felonies consisted of three convictions for third-degree burglary and one conviction each for

_____

[3]Ewing came to the Supreme Court of the United States through direct review, not through post-conviction petitions, and thus the deferential standard of review in 28 U.S.C. § 2254(d) did not apply.

1    obtaining money under false pretenses, grand larceny, and third-offense driving while intoxicated. Id.
2    at 279-80. He was then convicted of uttering a "no account" check for $100, and under South Dakota's
3    recidivist statute, he received a life sentence, and parole was not available in South Dakota for a person
4    convicted of a life sentence. Id. at 281-83. Although Helm's sentence was effectively the same as
5    petitioner's, and although Helm's criminal history was similar to petitioner's, if less violent, the court
6    nonetheless distinguishes Helm from this case. First, the Supreme Court of the United States used an
7    analysis in Helm from which it has since receded. Andrade, 538 U.S. at 72-73. Second, after the
8    decision in Helm, Congress has created the deferential standard of review in 28 U.S.C. § 2254(d). To
9    the extent that Helm is still good precedent, it only reinforces this court's conclusion that the gross
10   disproportionality principle is a general rule that gives the Nevada Supreme Court much leeway in
11   interpretation. If the Supreme Court of the United States can come to different conclusions in three
12   relatively similar cases, then the Nevada Supreme Court could hardly have applied the gross
13   disproportionality principle unreasonably.

14        Reasonable jurists might find this question to be debatable or wrong, and the court will
15   grant a certificate of appealability on this issue.

16        IT IS THEREFORE ORDERED that the amended petition for a writ of habeas corpus
17   (#4) is **DENIED**. The clerk of the court shall enter judgment accordingly.

18        IT IS FURTHER ORDERED that a certificate of appealability is **GRANTED** on whether
19   this court was correct in its ruling that the Nevada Supreme Court reasonably applied clearly established
20   federal law when it determined that petitioner's sentence was not grossly disproportionate in violation
21   of the Eighth Amendment.

22        Dated: This 26th day of October, 2010.

23
24   _____
25   ROBERT C. JONES
     United States District Judge
26
27
28

-6-